UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RYAN DARRES CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-241-TAV-CCS |
| | ) | |
| CITY OF ALCOA, TENNESSEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on the Motion for Summary Judgment of Defendants City of Alcoa, Tennessee, and Dustin Cook [Doc. 20]. Defendants move the Court to dismiss the action because there are no genuine issues of material fact in dispute and, as a matter of law, defendants are entitled to summary judgment. Plaintiff filed a response in opposition [Docs. 27, 28], and defendants replied [Doc. 30]. After careful examination of the record and the relevant law, the Court finds summary judgment appropriate and will dismiss this action.

**I.  Background[1]**

On May 2, 2012, upon the request of Detective Rodrigo Fernandez of the City of Maryville, Tennessee, officers from the City of Alcoa Police Department went to the Texas Roadhouse Restaurant in Alcoa, Tennessee, to assist with the service of a felony

---

[1] The Court sets forth only those facts relevant to its discussion regarding qualified immunity, as the Court's decision that Officer Cook is entitled to qualified immunity renders many facts irrelevant.

arrest warrant upon plaintiff Ryan Darres Craig, who was working at the restaurant [Doc. 27-2 p. 15–18]. Officer Caldwell of the Alcoa Police Department informed Officer Dustin Cook that, a couple weeks before, the suspect had resisted officers or fled from officers, but he did not inform Officer Cook that the felonies were violent [*Id.* at 16, 18]. Upon arrival at the restaurant, Alcoa police officers, including Officer Cook, established a perimeter around the restaurant [*Id.* at 19–20]. Then, two detectives entered the restaurant to serve the felony arrest warrant [Doc. 37-3 p. 40].

Craig's manager indicated that two individuals were at the restaurant to see him [*Id.*]. Craig recognized the individuals as detectives because of their firearms [*Id.* at 40–41], and he proceeded to flee from the detectives by running out the front door of the restaurant [*Id.* at 14–16, 40, 44]. Officer Caldwell made a radio call announcing that Craig had fled through the restaurant's front door [Doc. 27-2 p. 25]. Officer Cook heard this announcement [*Id.*].

Officer Cook then observed Craig running toward a hotel near the restaurant and proceeded to drive his police vehicle toward another nearby restaurant [*Id.*]. He stopped his vehicle and pursued Craig on foot [*Id.*]. During this pursuit, officers announced their presence and instructed Craig to stop [Doc. 27-2 p. 31–32; Doc. 27-3 p. 14–16]. Officer Cook, though, never made such announcement or instruction [Doc. 27-2 p. 31].

While Craig has no memory after reaching the nearby restaurant [Doc. 27-3 p. 14], Officer Cook saw Craig reach into his pants pocket with his hand [Doc. 27-2 p. 29]. Officer Cook believed that Craig was reaching for a weapon [*Id.*]. Craig also looked

2

back at Officer Cook [*Id.* at 29]. During this time, there were restaurant patrons nearby, and plaintiff was running toward cars [*Id.* at 33–34].

During Craig's attempt to flee, Officer Cook pulled his taser and aimed it at Craig's back, below his shoulder blades [*Id.* at 45–46]. Officer Cook saw Craig look back at him and make a maneuver to evade the taser [*Id.* at 46–47]. Officer Cook deployed the taser as the two were running, and the taser prongs struck Craig in the lower back and the head [*Id.* at 44–47, 51]. Craig fell to the pavement, face first, as the taser cycled for five seconds [*Id.* at 49–51].

Craig was examined by Alcoa police officers, who determined Craig lost consciousness [*Id.* at 53]. As Craig regained consciousness, he became resistive to the efforts of the officers as they rendered care [Doc. 23]. The officers restrained Craig, but did not strike him [*Id.*]. Craig was placed in an ambulance and taken to the hospital [*Id.*]. He suffered a fractured skull and his optic nerve was severed, rendering him blind in his right eye [Doc. 27-3 p. 23, 47].[2]

Craig filed this action, asserting claims for excessive use of force, deliberate indifference, and corporate liability under the Fourteenth Amendment, as well as state-law claims [Doc. 1]. Defendants the City of Alcoa, Tennessee, and Dustin Cook, in his individual and official capacities, move the Court for summary judgment [Doc. 20].

---

[2] While plaintiff's complaint indicates that he believed he was injured as a result of an altercation after he was tased, plaintiff seems to have abandoned this belief [*See* Doc. 21 p. 5; Doc. 27].

3

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the

4

evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Plaintiff asserts claims for excessive use of force, deliberate indifference, and corporate liability under the Fourteenth Amendment, as well as state-law claims [Doc. 1]. Defendants argue that plaintiff's Fourteenth Amendment claim and claim for deliberate indifference should be dismissed because his complaint asserts nothing more than excessive force, which should be examined under the Fourth Amendment. Defendants also argue that Officer Cook did not use excessive force and that he is entitled to qualified immunity. And because they assert there was no constitutional violation, they argue that the claims against the City of Alcoa should be dismissed. Finally, while defendants argue that plaintiff's state-law claims lack merit, they urge the Court to decline to exercise supplemental jurisdiction to the extent that the Court dismisses the federal claims.

5

### A.    14th Amendment Claim and Claim for Deliberate Indifference

Defendants argue that plaintiff's claims for violation of plaintiff's Fourteenth Amendment rights and for deliberate indifference are improper because plaintiff's allegations relate solely to the alleged use of excessive force during the seizure of plaintiff [Doc. 21 p. 6]. Defendants argue that it is well settled that claims for an alleged violation of constitutional rights relating to an alleged use of excessive force are properly analyzed under the Fourth Amendment only [*Id.*]. Plaintiff does not seem to dispute this argument [*See* Doc. 28], and the Court agrees that plaintiff's claims are properly analyzed under the Fourth Amendment objective reasonableness test because there is no dispute that there was a seizure here. *Darrah v. City of Oak Park*, 255 F.3d 301, 305–06 (6th Cir. 2001).

### B.    Qualified Immunity

Officer Cook asserts he is entitled to qualified immunity [Docs. 21, 30]. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2080 (2011) (citation omitted). Qualified immunity is an affirmative defense,[3] and once raised, the plaintiff must show that the official violated a right so clearly established "that every reasonable official would have understood that what he [was] doing violate[d] that right." *Id.* at

---

[3] Defendants pleaded qualified immunity in their answer [Doc. 2].

6

Case 3:13-cv-00241-TAV-CCS   Document 36   Filed 12/17/14   Page 6 of 12   PageID #: 545

2083 (citation and internal quotation mark omitted). The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citation omitted), and if the plaintiff fails to carry his burden as to either element of the qualified-immunity analysis, then the official is immune from suit, *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

In engaging in the qualified-immunity analysis, "[a] court is to use its 'sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand.'" *Walker v. City of Cookeville*, No. 2:12-00059, 2014 WL 919249, at *8 (M.D. Tenn. Mar. 7, 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Here, the Court begins by addressing the easier of the two inquires in this case; that is, the clearly-established prong.[4] *See Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012) (electing to address "the easier of the two questions"); *al-Kidd*, 131 S. Ct. at 2080 ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" (citation omitted)).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (alteration in original) (citation omitted). "The relevant dispositive inquiry in determining whether a

---

[4] Plaintiff did not address this part of the analysis in his response brief.

7

right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 231–44. "Although it need not be the case that 'the very action in question has previously been held unlawful, . . . in light of the pre-existing law the unlawfulness must be apparent.'" *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992) (omission in original) (citation omitted). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers*, 319 F.3d at 848. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

When deciding whether a right is clearly established, the reviewing court must not define the right at "a high level of generality," but at "a reasonably particularized" level of generality. *Hagans*, 695 F.3d at 508–09. Hence, the Court finds that the appropriate inquiry here is whether, on May 2, 2012, it was clearly established that a person fleeing from officers attempting to arrest him on a felony warrant had a right not to be tased in the back by an officer chasing after him.

Shortly before the incident underlying this case, in February 2012, the Sixth Circuit addressed a factual situation similar to the one presented here. *Cockrell v. City of Cincinnati* involved an officer who chased the plaintiff after observing the plaintiff jaywalk. 468 F. A'ppx at 492. The plaintiff ran away, and without any notice or order to

8

stop, the officer deployed his taser device in probe mode, which temporarily paralyzed the plaintiff and caused him to crash headlong into the pavement. *Id.* The Sixth Circuit determined that, at that time—as well as of the date of the decision—it was "not clear whether tasing a suspect who fled from the scene of a nonviolent misdemeanor constituted excessive force"; thus, the officer was entitled to qualified immunity. *Id.* at 497–98. In doing so, it noted two groups of cases involving taser use. The first "involves plaintiffs tased while actively resisting arrest by physically struggling with, threatening, or disobeying officers," and in those cases, "courts conclude either that no constitutional violation occurred, or that the right not to be tased while resisting arrest was not clearly established at the time of the incident." *Id.* at 495–96 (citing cases). The second involves plaintiffs who have "done nothing to resist arrest or [are] already detained," and in those cases, courts allow the excessive force claims because "'the right to be free from physical force when one is not resisting the police is a clearly established right.'" *Id.* at 496 (citing cases). Noting that the facts of the case did "not fit cleanly within either group," the Court of Appeals determined that "the contours of the right [the defendant] allegedly violated"—that is, the right not to be tased when fleeing from the scene of a non-violent misdemeanor and not disobeying any commands—were not so clear that every reasonable officer would have known that the defendant's actions were unconstitutional. *Id.* at 497. The Court finds the same analysis applies here and that the contours of the right Officer Cook is alleged to have violated were not so clear in May 2012 that every reasonable officer would have known that Officer Cook's actions were unconstitutional.

9

Plaintiff argues that Officer Cook did not say "taser" before firing the taser, in violation of Alcoa Police Department policies. But this contention does not change the Court's analysis of the clearly-established prong because it is undisputed that plaintiff was knowingly fleeing from law enforcement officers and disobeyed commands to stop. Indeed, in *Cockrell*, the officer did not even command the suspect to stop. 468 F. App'x at 497 n.7. Nor does plaintiff's characterization of a taser as a deadly weapon save plaintiff from application of qualified immunity. *Cf. Smith v. Cupp*, 430 F.3d 766, 776 (6th Cir. 2005) ("Use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable."). The Court of Appeals for the Sixth Circuit has specifically noted that tasers are not deadly weapons. *Thomas v. Plummer*, 489 F. App'x 116, 128–29 (6th Cir. 2012).

Accordingly, because not every reasonable officer would have understood that Officer Cook's conduct in tasing plaintiff violated the Fourth Amendment under law existing as of May 2, 2012, the Court finds Officer Cook is entitled to qualified immunity, even if he did use excessive force.

### C. Official Capacity

The Court finds it appropriate to dismiss plaintiff's official-capacity claims against Officer Cook as redundant. Pursuant to federal law, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The City of Alcoa,

Tennessee, is a defendant in this action and has thus received notice of the claims against it.

### D. City of Alcoa

Plaintiff asserts that the City of Alcoa failed to train Officer Cook on the proper use of a taser. Defendants cite to *Hagans v. Franklin County Sheriff's Office*, in which the Sixth Circuit said, "[t]o hold the [municipal entity] liable, [the plaintiff] must show that its 'failure to train' officers on the proper use of tasers 'amounts to deliberate indifference.'" 695 F.3d at 511 (citation omitted). "But 'a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established.'" *Id.* (citation omitted). This reasoning, which plaintiff does not contest, is applicable here, where, as in *Hagans*, the officer did not violate a right clearly established at the time of the challenged conduct. *Cf. Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005) ("[W]hen an officer violates a plaintiff's rights that are not clearly established, but a city's policy was the moving force behind the constitutional violation, the municipality may be liable even though the individual officer is immune."); *but see Modd v. Cnty. of Ottawa*, No. 1:10-CV-337, 2012 WL 5398797, at *19 (W.D. Mich. Aug. 24, 2012) (noting that the "statements about municipal liability" in *Gray* are "clearly *dictum*" and that the Sixth Circuit "continues to absolve municipal employers of liability, especially in failure-to-train cases, where its officers have been granted qualified immunity" (citation omitted)). Thus, the City of Alcoa is entitled to summary judgment.

11

Case 3:13-cv-00241-TAV-CCS   Document 36   Filed 12/17/14   Page 11 of 12   PageID #: 550

### E. State-Law Claims

Plaintiff alleges state-law claims in his complaint. While the Court has broad discretion under 28 U.S.C. § 1367(c)(3) to dismiss or to retain jurisdiction over pendent state-law claims under the circumstances presented by this case, "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001). *See, e.g., Jackson v. Town of Caryville, Tenn.*, Nos. 3:10-CV-153, 3:10-CV-240, 2011 WL 5143057, at *10 (E.D. Tenn. Oct. 28, 2011). Having found the federal claims should be dismissed on defendants' motion for summary judgment, pursuant to § 1367(c), and in the exercise of its discretion and in the interests of comity, the Court will decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiff's state-law claims. 28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26 (1966).

### IV. Conclusion

For the reasons explained, the Court will **GRANT** defendants' motion for summary judgment [Doc. 20] and **DISMISS** this action. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE